UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

GEORGE BRINCKU, BRENDA BRINCKU

                                Civil Action No. 2:11-cv-00338-JES-DNF

        Plaintiffs,

v.

NATIONAL GYPSUM COMPANY,
a Delaware Corporation,

        Defendants.
_____/

## DEFENDANT NEW NGC, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO ALLOW DESIGNATION OF REBUTTAL EXPERTS

Defendant New NGC, Inc., d/b/a National Gypsum Company ("National Gypsum"), hereby opposes Plaintiffs' Motion to Allow Designation of Rebuttal Experts (doc. no. 158).

**I. PERTINENT BACKGROUND**

The following is a timeline of events pertinent to Plaintiffs' motion to allow designation of what they claim are "rebuttal" expert reports:

*January 12, 2010*: Plaintiffs George Brincku, Brenda Brincku (collectively "Plaintiffs") and two other named plaintiffs filed a class action complaint (doc. no. 1) in the United States District Court for the Southern District of Florida against National Gypsum. On June 24, 2010, Plaintiffs amended the complaint (doc. no. 79), adding two additional named plaintiffs. On May 3, 2011, Plaintiffs filed a Second Amended Complaint (doc. no. 109), eliminating all other named defendants and all class allegations. As with their previous complaints, Plaintiffs allege in the Second Amended Complaint that they have corrosion in

their homes and they claim it was caused by drywall made by National Gypsum (e.g., *id.* at ¶ 1). National Gypsum disputes Plaintiffs' allegation that National Gypsum drywall, as opposed to the numerous other traditional causes of corrosion, caused the reported corrosion in each home. On June 9, 2011, this case was transferred to Your Honor (doc. no. 116).

*July 8, 2010*: Plaintiffs served Initial Disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1)(A), attached hereto as Exhibit 1, identifying nine individuals who inspected and tested the homes of the named plaintiffs.

*March 31, 2011*: National Gypsum was named as a defendant in a related case in the Middle District of Florida by Plaintiff Chris Brucker, which was originally commenced on June 25, 2010. (*See Brucker, et al. v. Lowes Home Centers, Inc., et al.*, Civil Action No. 2:10-cv-FtM-29SPC, pending before Your Honor) (the "*Brucker* action"). The *Brucker* action is a proposed class action that involves related allegations regarding National Gypsum drywall. Plaintiffs in the instant case and the *Brucker* action share common counsel, and the parties have coordinated discovery in the two actions.

*May 26, 2011*: National Gypsum moved to strike the class allegations in the *Brucker* action (*Brucker* action doc. no. 32). National Gypsum's motion (at p. 1) stated "Plaintiff Chris Brucker ("plaintiff") filed this putative nationwide class action asserting that some, though not all, National Gypsum drywall products cause metal corrosion – the same corrosion the government recently acknowledged is caused by numerous other sources, such as outdoor air, water gas, soil gas, sewer gas, and, most recently, certain drywall imported from China."

National Gypsum's Motion to Strike the Class Allegations further provided a

roadmap of the expert reports that would be submitted as to each named plaintiff:

> For *each* purported class member, following an extensive inspection of the property at issue, National Gypsum would offer the following expert reports:
>
> 1. An inspection report from a local construction expert experienced in, among other things, inspecting homes for the presence of corrosive Chinese-manufactured drywall and other sources of corrosion, to ascertain whether National Gypsum's drywall is actually present in the house;
>
> 2. A report from an analytical laboratory that performed destructive testing on the drywall in question;
>
> 3. A report from a metallurgist who analyzed the metals at the property in question for evidence of corrosion, and, if there were any, a determination of the type of corrosion and its likely source;
>
> 4. A report from an environmental engineer who inspected the property and sampled and analyzed its drywall, air, water, soil, and sewer system and any other sources of sulfide gases; and
>
> 5. Other appropriate report(s) based on the particular location and conditions of the property in question.
>
> Each purported class member would be required to offer expert reports that attempt to (a) identify the alleged defect in the drywall – something the Amended Complaint fails to do in a comprehensible way (*see* Am. Compl. ¶ 2); (b) link the alleged defect in the drywall in the property to the corrosion, if any, in the house; and (c) rule out alternative sources of the corrosion.

*Id.* at 10.

National Gypsum's Motion to Strike the Class Allegations also referenced several relevant Federal and State Agency Documents, which were quoted in and submitted as exhibits to the Motion:

> On April 15, 2011, the U.S. CPSC published a report stating that "[a]n elevated rate of corrosion in homes is not sufficient, by itself, to conclude that the corrosion is associated with problem drywall in the home. ***Outdoor corrosion rates may be the source of indoor corrosion in some of these homes (Homes H–K). Or, the corrosion source might originate from something other than the drywall***." CPSC Staff, Summary of Contractor's Evaluation of Homes Reported to Be Constructed with Domestic Drywall, at 4 (Apr. 15, 2011).
>
> Both the CPSC and the Florida DOH have published home-inspection criteria illustrating the extensive property inspection required for an investigation of any assertion that drywall caused corrosion in a home:
>
> > ***It is possible to misclassify homes [as containing defective drywall] because of other possible sources of metal corrosion, such as volatile sulfur compounds from sewer gas, well water, and outdoor contaminants that may enter the home independent of the presence of problem drywall in the home***.
>
> *CPSC Identification Guidance* (Mar. 18, 2011). The Florida DOH's "Case Definition (12-18-09) for Drywall Associated Corrosion in Residences" similarly highlights the need for a property inspection to rule out property-specific confounding factors:
>
> > If you have met the criteria for "possible case," ***ruled out other sources of hydrogen sulfide as significant contributors to copper corrosion in the home***, and receive positive results on a sufficient number of samples from one or more of the above evaluations in Criteria 3, the home meets the criteria for a "confirmed case". ***Some confounding factors that should be excluded as causes of observed corrosion are hydrogen sulfide from well water, sewer gas, or soil gas***.
>
> Florida DOH definition at pg. 2 (emphasis added). (doc. no. 32, at 4-5).

As further support for its Motion to Strike the Class Allegations, National Gypsum submitted actual expert reports from a claimant named Mr. Hazellief, a putative class member, and stated, "[i]n the case of the Hazellief Property, testing of the drywall showed

that it too was typical, benign drywall and not corrosive, and inspection of the property showed it had corrosion from hydrogen sulfide gas coming from the property's well water." *Id.* at 10.

*July 29, 2011*: Plaintiffs were served with a request for entry under Federal Rule of Civil Procedure 34, which was accompanied by a Home Inspection Protocol (attached hereto as Exhibit 2). The Home Inspection Protocol stated, in pertinent part, that National Gypsum's experts would be testing the property's water for sulfur and provided the following relevant detail:

> *Water samples*
> o  Attempt not to aerate the samples, and fill the container to "overflowing" leaving no headspace (i.e., no air bubbles). The sample should be preserved in the field with zinc acetate and NaOH solution to a pH over 9, capped and mixed vigorously, then and stored at a cool temperature (4 $^{\circ}$C).
> o  ***The samples should be sent to an independent laboratory for the analysis of total sulfide using Standard Method 4500-S2*** with a hold time of 7 days, and chloride and sulfate using EPA Method 9056.
> o  ***In the field, total sulfide in water samples will be measured by the Hach 8131 method using a portable spectrophotometer (Dr 2800, Hach)***. The samples also should be analyzed for typical stabilization parameters (e.g., dissolved oxygen, oxidation-reduction potential, and pH). Sample pH can be measured in the laboratory using the same sample as sulfate analysis.

Exhibit 1, at p. 9 (emphasis added).

*August 10, 2011*: Plaintiffs filed a response (doc. no. 144) to National Gypsum's Motion to Coordinate Discovery in the *Brincku* and *Brucker* actions and represented to the Court that Plaintiffs "seek an immediate trial of their case," "could be trial-ready within a matter of months," and "are prepared to move as expeditiously as possible to trial."

*August 11, 2011*: Plaintiffs were served with the following documents request:

> 20. All documents reflecting or concerning any inspection, sampling, testing, analysis, description, assessment and/or

> evaluation of the air, water, soil, sewage or septic system, water heater, and/or metals inside, underneath and/or outside of your property at issue in this case, including such documents created before, during, and after construction of the property.

National Gypsum's First Set of Document Requests to Plaintiff Brenda Brincku, and National Gypsum's First Set of Document Requests to Plaintiff George Brincku, No. 20 (served August 11, 2011). On September 14, 2011, Plaintiffs responded that "to the extent that non-privileged documents exist in Plaintiff[]s' possession, they will be produced."

*August 19, 2011*: The parties jointly submitted a proposed case management report to the Court (doc. no. 148). The joint report stated as follows:

> On or before the dates set forth in the above table [Plaintiffs: September 16, 2011; Defendants: October 6, 2011] for the disclosure of expert reports, the parties agree to fully comply with Fed. R. Civ. P. 26(a)(2) and 26(e). Expert testimony on direct examination at trial will be limited to the opinions, basis, reasons, data, and other information disclosed in the written expert report disclosed pursuant to this order. Failure to disclose such information may result in the exclusion of all or part of the testimony of the expert witness.

The parties' joint case management report does not provide for "rebuttal" expert reports.

*August 26, 2011*: The Court issued a scheduling order (doc. no. 149) stating, in pertinent part, as follows:

> On or before the dates set forth in the above table [Plaintiffs: September 16, 2011; Defendants: October 6, 2011] for the disclosure of expert reports, the parties agree to fully comply with Fed. R. Civ. P. 26(a)(2) and 26(e). Expert testimony on direct examination at trial will be limited to the opinions, basis, reasons, data, and other information disclosed in the written expert report disclosed pursuant to this order. Failure to disclose such information may result in the exclusion of all or part of the testimony of the expert witness.

*September 6 and 15, 2011*: National Gypsum's experts inspected Plaintiffs' home, sampled the air, water, soil and drywall, as had been outlined in National Gypsum's Motion to Strike the Class Allegations filed in the *Brucker* action and its Home Inspection Protocol provided to Plaintiffs in advance of the inspections. Plaintiffs were present at the inspections and had their attorney(s) present at the inspections.

*September 30, 2011*: Plaintiffs filed an Agreed Motion to Extend Deadlines of Case Management and Scheduling Order (doc. no. 154). In that Motion, Plaintiffs represented that "[t]he parties have commenced with discovery and have obtained experts. However, due to the complexity of the issues surrounding the claims alleged, Plaintiffs Experts require additional time to complete their testing and reports." *Id.* at p.1. Plaintiffs asked for a 60-day extension of expert reports and proposed a deadline of November 18, 2011 for service of their expert disclosures and December 16, 2011 for service of National Gypsum's expert disclosures.

*September 30, 2011*: The Court issued an Order (doc. no. 155) extending the deadlines for disclosure of expert reports to November 18, 2011 (for Plaintiffs) and December 16, 2011 (for Defendant).

*November 22, 2011*: Plaintiffs served their expert reports.

*December 23, 2011*: National Gypsum served its expert reports.

*January 4, 2012*: The Parties filed a Joint Motion to Extend Deadlines (doc. no. 156) representing to the Court that "[t]he parties have conducted paper discovery in this matter, inspected the homes at issue, obtained experts, exchanged expert reports, and are currently in the process of scheduling the depositions of all the named Plaintiffs and the experts for the

parties." The parties further represented that "[b]ecause of the number of experts obtained by each side, the reports took one week longer to complete than initially anticipated, ***but all of the expert reports have been completed as of December 23, 2011***." *Id.* at 4 (emphasis added).

*January 9, 2012*: The Court granted the Parties' Joint Motion to Extend the Deadlines, ordering among other things that expert depositions will be completed by February 29, 2011.

| Discovery Deadline (except for experts) | **January 30, 2012** |
|---|---|
| Expert Discovery Deadline | **February 29, 2012** |
| Mediation Deadline | **April 20, 2012** |
| *Daubert* Motions and Summary Judgment Motions | **March 16, 2012** |
| Deadline for Motions *In Limine* | **May 4, 2012** |

*January 17, 2012*: Despite Plaintiffs' prior representations to the Court that they "inspected the homes at issue," and that "all expert reports have been completed as of December 23, 2011," Plaintiffs filed the instant motion (doc. no. 158), asserting for the first time that they are "working with two additional intended expert witnesses, a well water expert, and a metallic corrosion expert." Plaintiffs further requested leave of Court to serve reports of these unidentified, proposed new experts on February 29, 2011, the current deadline by which all expert depositions are required to be completed.

**II.     ARGUMENT**

Plaintiffs' request to conduct additional testing that they could have performed on their houses at issue for at least the last eight months, as well as offer new experts, is unjustified and violates the Federal Rules of Civil Procedure, Eleventh Circuit law, and the Court's Scheduling Order, and is in contrast with Plaintiffs' own representations to the Court. Plaintiffs' request should be denied for several reasons.

*First,* Plaintiffs' proposed new experts are not "rebuttal" experts because the subject of their proposed testimony is the alleged cause of the reported corrosion in Plaintiffs' property, which is an issue on which Plaintiffs bear the burden of proof. Plaintiffs were and are required to disclose expert reports on this issue before National Gypsum because they bear the burden of proof: "[I]t must be noted that plaintiff, not defendants, has the burden of proof . . . and therefore should have been the one to disclose his expert testimony before defendants." *Hines v. Dean*, No. 1:02-cv-3390, 2005 WL 589803 (N.D. Ga. Mar. 10, 2005); *see also* Fed. R. Civ. P. 26(a)(2), Advisory Committee Notes to 1993 Amendments ("in most cases the party with the burden of proof on an issue should disclose its expert testimony on that issue before other parties are required to make their disclosures with respect to that issue"). In addition, according to Plaintiffs' own motion, they already have submitted five separate reports from experts "regarding testing of the homes" of Plaintiffs and the alleged cause of "corrosion in the homes of the Brincku plaintiffs." *See* Doc. no. 158, at p. 2. Therefore, their proposed new experts whom Plaintiffs claim will conduct additional testing of their homes are not "rebuttal" experts.

*Second*, Federal Rule of Civil Procedure 26(a)(2)(A) mandates automatic disclosure

-9-

of expert testimony: "In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." *Id.* "A party must make these disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Here, the Court ordered Plaintiffs' disclosures by November 18, 2011, and Plaintiffs represented to the Court just weeks ago that "all expert reports have been completed as of December 23, 2011." Therefore, Plaintiffs' proposed new expert reports are untimely, in violation of Federal Rule of Civil Procedure 26(a), the Court's Scheduling Order, and the parties' joint case management report submitted pursuant to Fed. R. Civ. P. 26(f).

Under Eleventh Circuit law, "[b]ecause the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise, compliance with the requirements of Rule 26 is not merely aspirational." *Reese v. Herbert*, 527 F.3d 1253, 1266 (11th Cir. 2008). Therefore, Plaintiffs' "failure to comply with Rule 26(a) [is] both unjustified and harmful to the defendants." *Id.* Here, Plaintiffs have had unfettered and continuous access to their homes for testing since before the action was commenced. The foregoing timeline demonstrates that Plaintiffs were on clear notice to come forward with their best expert evidence on the issues on which they bear the burden of proof, and they represented to the Court that they have "inspected the homes at issue," and that "all expert reports have been completed as of December 23, 2011." National Gypsum would be unfairly prejudiced by the surprise new experts because (a) National Gypsum would be forced to depose Plaintiffs' experts regarding issues on which Plaintiffs bear the burden of proof without the benefit of all of their Rule 26-mandated expert disclosures; (b)

National Gypsum experts would be unfairly deprived of an opportunity to respond to the new reports. This is precisely the type of surprise that Federal Rule of Civil Procedure 26 and *Reese* are intended to prevent.

***Third***, Federal Rule of Civil Procedure 37(c)(1) directs exclusion of Plaintiffs' undisclosed experts:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. Fed.R.Civ.P. 37(c)(1). Rule 26(a), in turn, requires a party to disclose to its adversary the identity of any witness that may testify at trial under Rules 702, 703, or 705 of the Federal Rules of Evidence. Fed.R.Civ.P. 26(a)(2)(A). The Rule also provides that: [a] party must make these disclosures at the times and in the sequence that the court orders.

*A & J Mfg., LLC v. Kingsford Products Co.*, LLC, CV 209-049, 2010 WL 1956042 (S.D. Ga. May 13, 2010). Because Plaintiffs' proposed new experts are untimely, they should be excluded under Fed. R. Civ. P. 37.

***Fourth,*** Plaintiffs have failed to carry their burden to show good cause and substantial justification. "[R]egarding expert disclosures, [where] the Rule 16(b) deadlines [have] passed [ ... ], the Plaintiff, in order to disclose expert reports and other required information under Rule 26(a)(2), is required to seek leave of this Court to amend the Rule 16(b) scheduling order. To justify such amendment, the Plaintiff must also demonstrate good cause requiring it." *Lavender v. Florida Gas Transmission Co.*, CIV.A. 02-0361-CG-L, 2003 WL 25682205 (S.D. Ala. June 30, 2003). Here, Plaintiffs have not offered any justification, let alone a substantial one, for why, in a case where they allege corrosion to

-11-

metals in homes which they have exclusively controlled since before the filing of this suit, they have failed to fully inspect or test the metals in their homes and the potential causes of reported corrosion of those metals. This failure is particularly unjustified where, as here, National Gypsum provided Plaintiffs more than a month before the inspection of their homes, with an inspection protocol detailing the home inspection and testing National Gypsum was going to do, and Plaintiffs and their counsel were present at the home inspections.

*Finally*, even if the Court were to conclude that Plaintiffs' proposed new experts on this issue of causation are "rebuttal" experts (and it is submitted for the reason stated above that they are not), the reports of such experts would be due January 23, 2012 and National Gypsum's experts would have an opportunity to respond, in accordance with Rule 26(a)(2)(C). "Where, as here, no court order speaks to the timing of the disclosure of rebuttal witnesses, Rule 26(a)(2)(C) requires a party to disclose the identity of such witnesses ***within thirty days after the opposing party discloses its experts***. Fed. R. Civ. P. 26(a)(2)(C)." *A & J Mfg., LLC v. Kingsford Products Co.*, LLC, CV 209-049, 2010 WL 1956042 (S.D. Ga. May 13, 2010) (emphasis added); *Dunn v. Zimmer, Inc.*, No. 3:00-CV1306, 2005 WL 563095, at *1 n.1 (D. Conn. Mar. 9, 2005) ("The court's scheduling order did not establish a time for the disclosure of rebuttal experts and therefore Rule 26(a)(2) (C) applies as a default.").

In summary, the foregoing timeline demonstrates that Plaintiffs were on clear notice of the causation issues stemming from their claims that metals in their homes were caused by National Gypsum drywall, as opposed to the numerous other established causes of corrosion. Plaintiffs were on clear notice from Federal Rules of Civil Procedure 26 and 37, the Court's Case Management Order, and the Parties Rule 26(f) case management report that they were

required to provide complete expert disclosures by November 18, 2011. Plaintiffs have had unfettered access since before they filed suit in June 2010 to their homes for inspection and testing by experts of their choosing. Plaintiffs' proposed new experts are not "rebuttal" experts because they are proposed to be offered on the issue of causation, on which Plaintiffs bear the burden of proof, and because according to Plaintiffs' own admission they already have expert witnesses who have addressed on causation. National Gypsum would be unfairly prejudiced by allowing designation of the new experts because (a) National Gypsum would be forced to depose Plaintiffs' experts regarding issues on which Plaintiffs bear the burden of proof without the benefit of all of their Rule 26-mandated expert disclosures; (b) National Gypsum experts would be unfairly deprived of an opportunity to respond to the new reports because the reports would not even be disclosed until the last day of expert discovery. This is precisely the type of surprise and prejudice that the Federal Rules referenced above were designed to prevent.

### III.   CONCLUSION

For the reasons set forth above, National Gypsum respectfully submits that Plaintiffs' Motion should be denied.

Dated: January 18, 2012                    /s/ Thomas V. Ayala
                                           Christopher J.M. Collings
                                           Fla. Bar No.: 184403
                                           MORGAN, LEWIS & BOCKIUS LLP
                                           5300 Wachovia Financial Center
                                           200 South Biscayne Boulevard
                                           Miami, FL 33131-2339
                                           (305) 415-3000 (Phone)
                                           (305) 415-3001 (Fax)
                                           ccollings@morganlewis.com

                                           James D. Pagliaro (*pro hac vice pending*)
                                           Thomas V. Ayala (*pro hac vice pending*)
                                           MORGAN, LEWIS & BOCKIUS LLP
                                           1701 Market Street
                                           Philadelphia, PA 19103
                                           (215) 963-5000 (Phone)
                                           (215) 963-5001 (Fax)

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 18, 2012 I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will in turn send a notice of electronic filing to **Brian W. Warwick** bwarwick@varnellandwarwick.com, Varnell & Warwick, PA, 20 La Grande Blvd, The Villages, FL 32159-2384; **Daniel M. Cohen** danielc@cuneolaw.com, Cuneo Gilbert & LaDuca, LLP, 106-A S Columbus St., Alexandria, VA 22314; **Gregory Scott Weiss** gweiss@leopoldkuvin.com, **Theodore J. Leopold** tleopold@leopoldkuvin.com, Leopold Law, P.A., 2925 PGA Boulevard, Suite 200, Palm Beach Gardens, FL 33410; **Scott William Anderson** sanderson@shb.com, Shook, Hardy & Bacon, LLP, Suite 2900, 100 N Tampa St., Tampa, FL 33602.

/s/ Thomas V. Ayala<br>Thomas V. Ayala